UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARRIANA ELLIOTT, Individually and on behalf of all others similarly situated, | § § § | **CASE NO. 4:23-cv-02708** |
| Plaintiff, | § § § | |
| v. | § § | **JURY TRIAL DEMANDED** |
| MAC PIZZA MANAGEMENT, INC. d/b/a DOMINO'S PIZZA, | § § § § | |
| Defendant. | § § | |

## CLASS ACTION COMPLAINT

Plaintiff Arriana Elliott ("Plaintiff") brings this Class Action Complaint ("Complaint") against Defendant MAC Pizza Management, Inc. d/b/a Domino's Pizza ("MAC Pizza" or "Defendant") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.    Between April 14, 2023, and April 22, 2023, Defendant MAC Pizza, a Texas company that "owns and operates 98 Domino's Pizza stores in and around southeast Texas"[1], lost control over its former and current applicants' and employees' highly sensitive personal information in a data breach perpetrated by cybercriminals ("Data Breach"). On information and belief, over 39,000 individuals were impacted by the Data Breach.

2.    On information and belief, the Data Breach occurred between April 14, 2023, and

---

[1] About, MAC Pizza, https://www.macpizzamgmt.com/about  (last accessed July 20, 2023).

April 22, 2023. MAC Pizza did not become aware of suspicious activity on its network until April 17, 2023, and even after discovery, continued to allow cybercriminals unfettered access to Defendant's network and Plaintiff's and the Class's personally identifiable information ("PII") for over a week.

3.    On information and belief, cybercriminals bypassed Defendant's inadequate security systems to access applicants' and employees' PII in its computer systems.

4.    On or around July 7, 2023—nearly three months after the Data Breach first occurred—Defendant finally began notifying victims about the breach ("Breach Notice"), an example of which has been attached as Exhibit A. However, MAC Pizza has not completed notification of Class Members and continues to do so.

5.    Defendant's Breach Notice obfuscated the nature of the breach and the threat it posed—refusing to tell Breach victims how many people were impacted, how the breach happened, or why it took the Defendant nearly three months to begin notifying victims that hackers had gained access to highly sensitive information.

6.    Defendant's failure to timely detect and report the Data Breach made its applicants and employees vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

7.    Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

8.    In failing to adequately protect applicants' and employees' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated state and federal law and harmed an unknown number of its former and current applicants and

employees.

9.    Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their PII. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

10.    Plaintiff Elliott is a former MAC Pizza applicant and Data Breach victim, receiving Defendant's Breach Notice on July 7, 2023.

11.    Accordingly, Plaintiff, on her own behalf and on behalf of a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

## PARTIES

12.    Plaintiff, Arriana Elliott, is a natural person and citizen of Texas, residing in Buna, Texas, where she intends to remain. Ms. Elliot had previously applied to MAC Pizza in October 2022.

13.    Defendant, MAC Pizza, is a Texas Corporation, with its principal place of business at 12633 State Highway 30 College Station, Brazos County, TX 77845.  The registered agent for service of process is Registered Agents Inc., 5900 Balcones Drive, Suite 100, Austin, TX 78731.

## JURISDICTION & VENUE

14.    This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

15.     This Court has personal jurisdiction over Defendant because MAC Pizza is headquartered and has its principal place of business in the Houston Division of the Southern District of Texas.

16.      Venue is proper in the Houston Division of the Southern District of Texas because MAC Pizza is headquartered in this District, has its principal place of business in the Houston Division of the Southern District of Texas and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred there.

## BACKGROUND FACTS

### *MAC Pizza*

17.     MAC Pizza is a Texas company that "owns and operates 98 Domino's Pizza stores in and around southeast Texas" and is constantly "looking for great people to join our team".[2] MAC Pizza boasts over $48.7 million in annual revenue.[3]

18.     On information and belief, MAC Pizza accumulates highly sensitive PII of its applicants and employees, including names, social security numbers, dates of birth, drivers license numbers and other personal information.

19.     On information and belief, MAC Pizza maintains former applicants' and employees' PII for years after the applicant-employer and employee-employer relationships are terminated.

20.     In collecting and maintaining its applicants' and employees' PII, Defendant agreed it would safeguard the data in accordance with state and federal law. After all, Plaintiff and Class

---

[2] About, MAC Pizza, https://www.macpizzamgmt.com/about  (last accessed July 20, 2023).
[3] MAC Pizza, Zoominfo, https://www.zoominfo.com/c/mac-pizza-management-inc/397898857 (last accessed July 20, 2023).

Members themselves took reasonable steps to secure their PII.

21.     Despite recognizing its duty to do so, on information and belief, MAC Pizza has not implemented reasonable cybersecurity safeguards or policies to protect employee PII or trained its IT or data security employees to prevent, detect, and stop breaches of MAC Pizza's systems. As a result, MAC Pizza leaves vulnerabilities in its systems for cybercriminals to exploit and gain access to applicant and employee PII.

***MAC Pizza Fails to Safeguard Applicants' and Employees' PII***

22.     Plaintiff is a former applicant of MAC Pizza.

23.     As a condition of applying for employment with MAC Pizza, Defendant requires its applicants and employees to disclose PII including but not limited to, their names, Social Security numbers, and driver's license number. Defendant used that PII to facilitate its application for employment of Plaintiff and required Plaintiff to provide that PII to apply for employment.

24.     On information and belief, MAC Pizza collects and maintains former and current applicants' and employees' PII in its computer systems.

25.     In collecting and maintaining the PII, MAC Pizza implicitly agrees it will safeguard the data using reasonable means according to state and federal law.

26.     According to the July 7, 2023, Breach Notice, MAC Pizza first "discovered it was the victim of a cyber-attack" on April 17, 2023. Following an internal investigation, MAC Pizza discovered that "an unauthorized third party accessed our computer systems at times between April 14, 2023, and April 22, 2023." Ex. A.

27.     In other words, MAC Pizza's investigation revealed that Defendant's inadequate cyber and data security systems and measures were completely inadequate and allowed those responsible for the cyberattack to obtain files containing a treasure trove of thousands of MAC

Pizza applicants' and employees' highly private and sensitive information.

28.    Additionally, Defendant admitted that Plaintiff's and the Class's PII were actually stolen during the Data Breach, confessing that the information was not just accessed but that the cybercriminals "may accessed and **acquired** certain documents form MAC Pizza's **sys**tems." Ex. A.

29.    Applicants and employees place value in data privacy and security. These are important considerations when deciding who to apply and work for. Plaintiff would not have accepted the Defendant's offer to apply for employment, nor provided her PII, had she known that MAC Pizza does not take all necessary precautions to secure the PII given to it by its applicants and employees.

30.    On or about July 7, 2023–almost three months after the Data Breach occurred– MAC Pizza finally notified Plaintiff and Class Members about the Data Breach.

31.    Despite its duties to safeguard PII, MAC Pizza does not follow industry standard practices in securing applicants' and employees' PII, as evidenced by the Data Breach and stolen PII.

32.    In response to the Data Breach, MAC Pizza contends that it has "taken steps to reduce the risk of this type of incident occurring in the future, including enhancing our technical security measures." Ex. A. Although MAC Pizza fails to expand what these alleged "steps" and "enhancements" are, such steps and enhancements should have been in place before the Data Breach.

33.    Through its Breach Notice, MAC Pizza also recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "remain vigilant to protect against potential fraud and/or identity theft by, among other things, reviewing your

account statements and monitoring credit reports closely." Ex. A.

34.    On information and belief, MAC Pizza has not offered all Class Members complimentary credit monitoring services to victims and, even if it has offered some Class Members credit monitoring, it does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves PII that cannot be changed, such as Social Security numbers. Further, the breach exposed applicants' and employees' nonpublic, highly private information, a disturbing harm in and of itself.

35.    Even with complimentary credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

36.    Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

37.    On information and belief, MAC Pizza failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over applicant and employee PII. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing PII. Further, the Breach Notice makes clear that MAC Pizza cannot, or will not, determine the full scope of the Data Breach.

***Plaintiff's Experience***

38.    Plaintiff Elliott is a former MAC Pizza applicant, having applied for employment

in October 2022.

39.    As a condition of applying for employment with MAC Pizza, Plaintiff was required to provide her PII, including but not limited to her full name, Social Security number, and driver's license number.

40.    Plaintiff provided her PII to MAC Pizza and trusted that the company would use reasonable measures to protect it according to state and federal law.

41.    Plaintiff Elliott received a Breach Notice on July 7, 2023, from Defendant, indicating that her PII, including at least her name, Social Security number, and driver's license number may have been compromised in the Data Breach. In addition to the damages detailed herein, the Data Breach has caused Plaintiff to be at substantial risk for further identity theft.

42.    Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by failing to notify her about it for almost three months after MAC Pizza finally discovered the Data Breach.

43.    Plaintiff suffered actual injury from the exposure of her PII —which violates her rights to privacy.

44.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of her PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

45.    Plaintiff does not recall ever learning that her PII was compromised in a data breach incident, other than the breach at issue in this case.

46.    As a result of the Data Breach and the recommendations of Defendant's Notice, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial

account statements, changing her online account passwords, placing a credit freeze through the three main credit bureaus, and monitoring her credit information as suggested by Defendant.

47.    Plaintiff has and will spend considerable time and effort monitoring her accounts to protect herself from identity theft. Plaintiff fears for her personal financial security and uncertainty over what PII was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

48.    Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's delay in informing Plaintiff and Class Members about the Data Breach.

49.    Plaintiff has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

50.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

51.    The ramifications of Defendant's failure to keep Plaintiff's and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number, or other nonpublic financial information, without permission, to commit fraud or other crimes.

52.    The types of PII compromised and potentially stolen in the MAC Pizza Data Breach

is highly valuable to identity thieves. The applicants' and employees' stolen PII can be used to gain

access to a variety of existing accounts and websites to drain assets, bank accounts or open phony

credit cards.

53.     Identity thieves can also use this data to harm Plaintiff and Class members through

embarrassment, blackmail, or harassment in person or online, or to commit other types of fraud

including obtaining ID cards or driver's licenses, fraudulently obtaining tax returns and refunds,

and obtaining government benefits. A Presidential Report on identity theft from 2008 states that:

> In addition to the losses that result when identity thieves
> fraudulently open accounts or misuse existing accounts, . . .
> individual victims often suffer indirect financial costs, including the
> costs incurred in both civil litigation initiated by creditors and in
> overcoming the many obstacles they face in obtaining or retaining
> credit. Victims of non-financial identity theft, for example, health-
> related or criminal record fraud, face other types of harm and
> frustration.
>
> In addition to out-of-pocket expenses that can reach thousands of
> dollars for the victims of new account identity theft, and the
> emotional toll identity theft can take, some victims have to spend
> what can be a considerable amount of time to repair the damage
> caused by the identity thieves. Victims of new account identity
> theft, for example, must correct fraudulent information in their
> credit reports and monitor their reports for future inaccuracies,
> close existing bank accounts and open new ones, and dispute
> charges with individual creditors.

54.     As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the

proposed Class have suffered and will continue to suffer damages, including monetary losses, lost

time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.   The loss of the opportunity to control how their PII is used;

b.   The diminution in value of their PII;

c.   The compromise and continuing publication of their PII;

      d.   Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

      e.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

      f.   Delay in receipt of tax refund monies;

      g.   Unauthorized use of stolen PII; and

      h.   The continued risk to their PII, which remains in the possession of defendant and is subject to further breaches so long as defendant fails to undertake the appropriate measures to protect the PII in their possession.

55.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.[4]

56.    The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

57.    Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover,

---

[4] Here's How Much Your Personal Information Is Selling for on the Dark Web, Experian, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited July 7, 2022).

Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

58.     It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

59.     One such example of criminals using PII for profit is the development of "Fullz" packages.

60.     Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.[5]

61.     The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the proposed Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

62.     Defendant disclosed the PII of Plaintiff and the Class for criminals to use in the

---

[5] *Id.*

conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and members of the proposed Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (*i.e.*, identity fraud), all using the stolen PII.

63.    Defendant's use of outdated and insecure computer systems and software that are easy to hack, and its failure to maintain adequate security measures and an up-to-date technology security strategy, demonstrates a willful and conscious disregard for privacy, and has exposed the PII of Plaintiff and members of the proposed Class to unscrupulous operators, con artists, and criminals.

*64*.    Defendant's failure to properly notify Plaintiff and members of the proposed Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

### *MAC Pizza Failed to Adhere to FTC Guidelines*

65.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

66.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

     a.    protect the personal customer information that they keep;

b.  properly dispose of personal information that is no longer needed;

c.  encrypt information stored on computer networks;

d.  understand their network's vulnerabilities; and

e.  implement policies to correct security problems.

67.  The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

68.  The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

69.  The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

70.  Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Plaintiff and Class Members Suffered Damages***

71.  The compromised and stolen information of Plaintiff and Class members is private and sensitive in nature and was left inadequately protected by MAC Pizza. Defendant did not

obtain Plaintiff's and Class members' consent to disclose this data to any other person as required by applicable law and industry standards.

72.    The data breach was a direct and proximate result of Defendant's failure to properly safeguard and protect Plaintiff's and Class members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including the failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class members' sensitive personal information to protect against reasonably foreseeable threats to the security or integrity of such information.

73.    Had MAC Pizza remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, MAC Pizza would have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and the Class Members' PII.

74.    As a direct and proximate result of Defendant's wrongful actions and inaction and the resulting data breach, Plaintiff and Class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the data breach on their lives including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports. This time has been lost forever and cannot be recaptured.

75.    Defendant's wrongful actions and inaction directly and proximately caused the

potential theft and dissemination into the public domain of Plaintiff's and Class members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

    a.   theft of their personal and financial information;

    b.   unauthorized charges on their debit and credit card accounts;

    c.   the actual, imminent, and certainly impending injury flowing from potential fraud and identity theft posed by their credit/debit card and personal information being placed in the hands of criminals and misused via the sale of Plaintiff's and Class members' information on the Internet's black market;

    d.   the untimely and inadequate notification of the data breach;

    e.   the improper disclosure of their PII;

    f.   loss of privacy;

    g.   ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach;

    h.   ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market;

    i.   ascertainable losses in the form of the loss of cash back or other benefits as a result of their inability to use certain accounts and cards affected by the data breach;

    j.   loss of use of, and access to, their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their

credit including adverse credit notations; and

k. the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the inconvenience, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

## CLASS ACTION ALLEGATIONS

76.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and all members of the proposes class (the "Class"), defined as follows:

> All individuals residing in the United States whose PII was compromised in the MAC Pizza Data Breach, including all those who received notice of the breach.

77.     The following people are excluded from the Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which the Defendant or its parent has a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

78.     Plaintiff reserves the right to amend the Class definition or add a Class if further information and discovery indicate that other classes should be added and if the definition of the Class should be narrowed, expanded, or otherwise modified.

79.     Plaintiff and members of the Class satisfy the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23:

a.      **Numerosity**. Plaintiff is representative of the proposed Class, consisting of approximately 39,000 members, far too many to join in a single action;

b.      **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and the Class Members sustained damages arising out of Defendant's Data Breach, wrongful conduct and misrepresentations, false statements, concealment, and unlawful practices, and Plaintiff and the Class Members sustained similar injuries and damages, as a result of Defendant's uniform illegal conduct;

c.      **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Class, and Defendant has no defenses unique to Plaintiff.

d.      **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

i.      Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

ii.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii.  Whether Defendant was negligent in maintaining, protecting, and securing PII;

iv.   Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's PII;

v.    Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi.   Whether Defendant's Breach Notice was reasonable;

vii.  Whether the Data Breach caused Plaintiff and the Class injuries;

viii. What the proper damages measure is; and

ix.   Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

e.    **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and

19

expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

80.     Plaintiff and the members of the Class incorporate the above allegations as if fully set forth herein.

81.     Plaintiff and members of the Class entrusted their PII to MAC Pizza. Defendant owed a duty to Plaintiff and the Class to exercise reasonable care in safeguarding and protecting their PII and keeping it from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties. This duty included, among other things, designing, maintaining, and testing Defendant's security systems to ensure the PII of Plaintiff and the Class was adequately secured and protected, including using encryption technologies. Defendant further had a duty to implement processes that would detect a breach of its security system in a timely manner.

82.     MAC Pizza was under a basic duty to act with reasonable care when it undertook to collect, create, and store Plaintiff's and the Class's sensitive data on its computer system, fully aware–as any reasonable entity of its size would be–of the prevalence of data breaches and the resulting harm such a breach would cause. The recognition of Defendant's duty to act reasonably in this context is consistent with, *inter alia*, the Restatement (Second) of Torts § 302B (1965), which recounts a basic principle: an act or omission may be negligent if the actor realizes or should realize it involves an unreasonable risk of harm to another, even if the harm occurs through the

20

criminal acts of a third party.

83.    Defendant knew that the PII of Plaintiff and the Class was personal and sensitive information that is valuable to identity thieves and other criminals. Defendant also knew of the serious harm that could happen if the PII of Plaintiff and the Class was wrongfully disclosed.

84.    By being entrusted by Plaintiff and the Class to safeguard their PII, Defendant had a special relationship with Plaintiff and the Class. Plaintiff and the Class agreed to provide their PII with the understanding that Defendant would take appropriate measures to protect it and would inform Plaintiff and the Class of any security concerns that might call for action by Plaintiff and the Class.

85.    Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class members' PII by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite failures and intrusions, and allowing unauthorized access to Plaintiff' and the other Class member's PII.

86.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and the Class, their PII would not have been compromised, stolen, and viewed by unauthorized persons. Defendant's negligence was a direct and legal cause of the theft of the personal data of Plaintiff and the Class and all resulting damages.

87.    The injury and harm suffered by Plaintiff and the Class members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Class members' PII. Defendant knew its systems and technologies for processing and securing the PII of Plaintiff and the Class had numerous security vulnerabilities.

88.    As a result of this misconduct by Defendant, the PII of Plaintiff and the Class were

compromised, placing them at a greater risk of identity theft and subjecting them to identity theft, and their PII was disclosed to third parties without their consent. Plaintiff and Class members also suffered diminution in value of their PII in that it is now easily available to hackers on the Dark Web. Plaintiff and the Class have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

## SECOND CAUSE OF ACTION
### Negligence *Per Se*
### (On Behalf of Plaintiff and the Class)

89.     Plaintiff and the members of the Class incorporate the above allegations as if fully set forth herein.

90.     Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's PII.

91.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, applicants' and employees' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the members of the Class's sensitive PII.

92.     Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein.

93.     Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se.*

94.     The harm that has occurred is the type of harm the FTC Act is intended to guard

against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

95.    Defendant breached its respective duties to Plaintiff and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's PII.

96.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

97.    The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

98.    Had Plaintiff and members of the Class known that Defendant did not adequately protect their PII, Plaintiff and members of the Class would not have entrusted Defendant with their PII.

99.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and members of the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

100.    Additionally, as a direct and proximate result of Defendant's negligence *per se*,

Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as MAC Pizza fails to undertake appropriate and adequate measures to protect their PII in its continued possession.

**THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

101.    Plaintiff and the members of the Class incorporate the above allegations as if fully set forth herein.

102.    Plaintiff and Class Members were required to provide their PII Defendant as a condition of applying for and receiving employment from Defendant. Plaintiff and Class Members provided their PII to Defendant in exchange for Defendant's employment application.

103.    Plaintiff and the Class Members accepted Defendant's offers by disclosing their PII to Defendant in exchange for applying for employment.

104.    In turn, and through internal policies, Defendant agreed to protect and not disclose the PII to unauthorized persons.

105.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their PII.

106.    After all, Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

107.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

108.    The covenant of good faith and fair dealing is an element of every contract. Thus,

parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

109.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

110.    Defendant materially breached the contracts it entered with Plaintiff and Class Members by:

a.  failing to safeguard their information;

b.  failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c.  failing to comply with industry standards;

d.  failing to comply with the legal obligations necessarily incorporated into the agreements; and

e.  failing to ensure the confidentiality and integrity of the electronic PII that Defendant created, receive and maintained.

111.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

112.    Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries (as detailed *supra*).

113.    Plaintiff and Class Members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

### FOURTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

114.    Plaintiff and the members of the Class incorporate the above allegations as if fully set forth herein.

115.    This claim is pleaded in the alternative to the breach of implied contract claim.

116.    Plaintiff and Class Members conferred a benefit upon Defendant. Defendant benefitted from using their PII to facilitate its business.

117.    Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class Members. And Defendant benefited from receiving Plaintiff's and Class Members' PII, as this was used to facilitate its business.

118.    Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

119.    Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

120.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class Members' PII because Defendant failed to adequately protect their PII.

121.    Plaintiff and Class Members have no adequate remedy at law.

122.    Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class Members—all unlawful or inequitable proceeds that it received because of

its misconduct.

## FIFTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

123.    Plaintiff and the members of the Class incorporate the above allegations as if fully set forth herein.

124.    Given the relationship between Defendant and Plaintiff and Class members, where Defendant became guardian of Plaintiff's and Class members' PII, Defendant became a fiduciary by its undertaking and guardianship of the PII, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff's and Class members' PII; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

125.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendant's relationship with them—especially to secure their PII.

126.    Because of the highly sensitive nature of the PII, Plaintiff and Class members would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII had they known the reality of Defendant's inadequate data security practices.

127.    Defendant breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII.

128.    Defendant also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

129.    As a direct and proximate result of Defendant's breach of its fiduciary duties,

Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed supra).

### SIXTH CAUSE OF ACTION
**Intrusion upon Seclusion/Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

130.    Plaintiff and the members of the Class incorporate the above allegations as if fully set forth herein.

131.    The State of Texas recognizes the tort of Intrusion upon Seclusion, and adopts the formulation of that tort found in the Restatement (Second) of Torts, which states:

> One who intentionally   intrudes, physically or otherwise, upon the solitude  or seclusion  of another or his  private affairs or con cerns,  is  subject  to  liability  to  the  other  for  invasion   of  his privacy,  if  the  intrusion  would  be  highly  offensive  to  a reasonable  person.

Restatement (Second) of Torts§ 652B (1977).

132.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

133.    Defendant owed a duty to its applicants and employees, including Plaintiff and the Class, to keep this information confidential.

134.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff's and Class members' PII is highly offensive to a reasonable person.

135.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such

information would be kept private and would not be disclosed without their authorization.

136.   The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

137.   Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

138.   Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

139.   Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

140.   As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed supra).

141.   Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII are still maintained by Defendant with their inadequate cybersecurity system and policies.

142.   Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

143.   In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class

members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## PRAYER FOR RELIEF

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.  Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing their counsel to represent the Class;

B.  Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.  Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.  Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E.  Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.  Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.  Awarding attorneys' fees and costs, as allowed by law;

H.  Awarding prejudgment and post-judgment interest, as provided by law;

I.      Granting Plaintiff and the Class leave to amend this complaint to conform to the

evidence produced at trial; and

J.      Granting such other or further relief as may be appropriate under the circumstances.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

DATED:  July 24, 2023                    Respectfully submitted,


_/s/ Joe Kendall_
JOE KENDALL
Texas Bar No. 11260700
SDTX Bar No. 30973
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Telephone:  214/744-3000
Facsimile:  214/744-3015
jkendall@kendalllawgroup.com

Samuel J. Strauss*
sam@turkestrauss.com
Raina C. Borrelli *
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone (608) 237-1775
Facsimile: (608) 509-4423

***Pro Hac Vice Forthcoming***

***Attorneys for Plaintiff and Proposed Class***